FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

99 JUN 10 PM 3:51

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | | |
|---|---|---|
| REBECCA ROMEO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CV-98-AR-1256-E |
| | ) | |
| INTERNATIONAL SPEEDWAY CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
JUN 10 1999

## MEMORANDUM OPINION

Currently before the court is defendant's motion for summary judgment, filed April 30, 1999. Plaintiffs, Rebecca L. Romeo ("Mrs. Romeo") and Jeffrey K. Romeo ("Mr. Romeo") filed this action on April 20, 1998, alleging that defendant, International Speedway Corporation ("Speedway"),[1] acted negligently and wantonly by failing to maintain the exit ramps at Talladega Motor Speedway in such a way to prevent Mrs. Romeo's accidental fall and resulting knee injury. Mr. Romeo additionally sues for loss of consortium.

---

[1] The court notes that most of the documents on record mistakenly refer to "International Motor Speedway, et al.," and "defendants" in the plural. There is only one defendant in this case, International Speedway Corporation, a Florida corporation which conducts business in Alabama as Talladega Motor Speedway. Were Talladega Motor Speedway a separate and distinct Alabama business entity (and thus a second defendant), diversity would be destroyed and this court would lack subject matter jurisdiction.



## Undisputed Pertinent Facts

In April, 1996, plaintiffs attended a race at the Talladega Motor Speedway, which is owned and operated by Speedway. After the race, as the plaintiffs were leaving the racetrack, Mrs. Romeo slipped and fell while walking down an exit ramp. Mrs. Romeo's knee was injured, and she subsequently underwent two surgeries.

Speedway had a practice of inspecting ramps before and after each racing event, removing any accumulated debris (such as gravel, etc.) by means of air-blowing machines. The exit ramps at Talladega Motor Speedway had been inspected and cleared of debris one day prior to Mrs. Romeo's accident, just after the previous day's racing event had concluded. Despite such efforts, loose pieces of asphalt and gravel were present on the asphalt-covered ramp at the time Mrs. Romeo walked down it, apparently having been kicked up by the thousands of spectators who had attended the race. *J. Romeo depo.*, at 42. Mrs. Romeo slipped on this debris.

There is deposition testimony to the effect that the Romeos' friend, Gerald Lewis, who attended the race with plaintiffs, observed the loose pieces of asphalt prior to Mrs. Romeo's fall, and that he warned her about the potential hazard. *Lewis depo.*, at 8. Mrs. Lewis does not affirmatively deny that she heard Lewis' warning, but she does not now recall hearing

such a warning. *R. Romeo depo.*, at 65. At a minimum, Mrs. Romeo was aware, if only half-consciously, that the debris was present on the exit ramp, but she states that she was not actively watching her step as she walked, because it was necessary to pay attention to the crowd around her. *Id.*, at 68-69.

After Mrs. Romeo underwent surgery on her knee, she suffered a terrible automobile accident, which paralyzed her from the waist down. Coincidentally, the accident occurred while Mrs. Romeo was driving home from a visit to her doctor regarding treatment of her knee. Due to this paralysis, Mrs. Romeo has not aggressively sought further knee treatment.

Plaintiffs claim that Speedway acted negligently and wantonly by not cleaning the debris from the ramp, by not building a handrail along the ramp, by building the ramp with too steep a slope, by not placing cautionary signs along the ramp, or by not taking other precautionary measures which would have prevented her injury. Mr. Romeo sues for loss of "the consortium and society" of his spouse.

<u>Analysis of Mr. Romeo's Claim<br>for Loss of Consortium</u>

Mr. Romeo concedes his claim for loss of consortium, as his brief in opposition to summary judgment nowhere attempts to

rebut Speedway's defense to that claim. The court can understand why he is abandoning his claim, because according to his deposition testimony, he is trying to lay his wife's paralysis at the feet of Speedway. Despite the fact that Mr. Romeo would like for the jury to hold Speedway responsible for Mrs. Romeo's paralysis, the law cannot. In his deposition, Mr. Romeo testified as follows:

> Q. Do you claim... that the automobile accident was caused by anything that the Speedway did?
> A. In my mind, if she hadn't slipped and tore up her knee, she wouldn't have been in Birmingham for any type of reason [and thus would not have been driving to and from a Birmingham doctor's office at the time of the accident].*** And whether it's right or wrong or legal, to me, it's their fault.

*J. Romeo depo.*, at 101.

Can Speedway be held liable because it is the "but-for" cause of Mrs. Romeo's paralyzing auto accident? In other words, <u>but for</u> her knee injury, Mrs. Romeo would not have had to drive to her doctor in Birmingham and would not have been in the car under the circumstances that resulted in her accident. This is probably true. But the law of tort liability in Alabama requires more. Speedway correctly cites the operative principle under Alabama law:

> [H]owever negligent a party may have been in some particular, he is accountable only to those injured as a proximate result of such negligence. Where some independent agency intervenes and is the immediate cause of the injury, the party guilty of prior negligence is not liable.

*Hall v. Booth*, 423 So.2d 184, 185 (Ala. 1982).

Under Alabama law, Speedway is indeed a "but-for" cause of Mrs. Romeo's car accident, but <u>no more than</u> a "but-for" cause. As far as the law is concerned, the court can conceive of practically unlimited "but-for" causes of Mrs. Romeo's car accident. Because the paralysis-inducing automobile accident intervened in the causal chain, it must be considered the proximate cause of Mrs. Romeo's paralysis.

While the court does not interpret the complaint to include a claim by Mrs. Romeo related to her paralysis, to the extent that Mrs. Romeo does make such a claim, that claim fails for the same reason that Mr. Romeo abandoned his loss of consortium claim. Indeed, she appears to concede this point in her deposition:

> Q. Do you claim that the speedway is responsible, then, for your paralysis?
> A. I'm not claiming that. The wreck caused that.

R. *Romeo depo.*, at 99-100.

Accordingly, all claims related to Mrs. Romeo's paralysis are due to be dismissed.

### Negligence and Wantonness Claims

Mrs. Romeo presents some evidence in support of her claim for negligence. The various depositions confirm the presence of debris on the asphalt where she fell, and there is no evidence to deny that her knee injuries resulted from that fateful

stumble. To support a negligence claim, Mrs. Romeo must only demonstrate that Speedway had actual or constructive notice of a potential hazard on the exit ramps at the Talladega Motor Speedway. The court finds that she has presented evidence which, if believed, could lead a reasonable jury to conclude that Speedway had constructive notice of a potential hazard. Speedway was apparently aware that the trampling of thousands of visitors usually resulted in some amount of debris upon the ramps after racing events. In response, Speedway regularly inspected and cleaned away such debris on the ramps. A jury will have to determine whether Speedway acted reasonably to prevent potential injuries, or whether Speedway should have done more, such as acting to prevent loose asphalt and gravel from accumulating in the first place, or could have taken other measures to render such accumulation harmless, such as building less steep ramps, erecting handrails, or posting cautionary signs.

Although Mrs. Romeo's negligence claim will proceed, it will, of course, remain subject to Speedway's affirmative defenses. Speedway's brief in support of summary judgment, supported by the depositions of Gerald Lewis and Mrs. Romeo, create questions of material fact as to whether Mrs. Romeo had sufficient notice about the presence of potentially hazardous debris on the exit ramp, and whether she was contributorily

negligent by failing to "watch her step." If a jury finds contributory negligence on her part, Speedway cannot be held liable under Alabama law. *See, e.g. Duffy v. Bell Air Corp.*, 481 So.2d 872, 874-75 (Ala. 1985).[2]

Finally, the court finds that Mrs. Romeo does not present sufficient evidence to support any claim for wanton misconduct. Under Alabama law, wantonness is not simply a higher degree of

---

[2] The *Duffy* opinion contains the following passage, wherein the plaintiff's deposition testimony is quoted. It bears a striking resemblance to portions of Mrs. Romeo's testimony:

> Q. What did you fall on, if anything?
> A. There was rocks there; little gravel.
>             [***]
> Q. Okay. And you saw those in the street?
> A. Yes.
> Q. And you saw them as you were walking across the street?
> A. I saw them there as I was--well, I was standing there.
> Q. And before you fell?
> A. Yes.
>             [***]
> Q. Were you concerned about slipping on them?
> A. Not really. I had passed there many times before.
> Q. Had you seen them there many times before?
> A. Yes.
> Q. Had you ever slipped on them before?
> A. No.

*Duffy*, at 874.

The *Duffy* court concluded, on the basis of the deposition testimony, as follows:
> It is clear from Mrs. Duffy's deposition that she knew of the existence of the hazard prior to the accident. There was no evidence to the contrary before the trial court. Therefore, the trial court properly determined that defendant was entitled to a judgment as a matter of law.

*Id.*

The present case is distinguishable at the summary judgment stage only in that the evidence is disputed as to whether Mrs. Romeo had sufficient previous awareness of the potentially slippery conditions at Speedway's racetrack, in such a way that a heightened burden of caution shifted to her shoulders. Additionally, there is no evidence, as in *Duffy*, that Mrs. Romeo had been to Speedway's racetrack previously and had observed the same or similar conditions.

negligence, but is a different concept of culpability. *See, e.g. Lynn Strickland Sales & Services, Inc. v. Aero-Lane Fabricators, Inc.*, 510 So.2d 142, 145 (Ala. 1987). Alabama statutory law defines "wantonness" as "[c]onduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala. Code 1975 § 6-11-20. The Eleventh Circuit has interpreted "wantonness" under Alabama law by explaining:

> [W]anton conduct "is the conscious doing of some act or the omission of some duty [by one who has] knowledge of the existing conditions, and [who is] conscious that from the doing of such act or omission of such duty injury will likely or probably result."... When a person from his knowledge of existing conditions and circumstances is conscious that his conduct <u>will probably result in injury</u>, yet he acts with reckless indifference or disregard of the natural or probable consequences of his act or failure to act, he would be found liable for wantonness.

*Rommell, et al., v. Automobile Racing Club of America, et al.*, 964 F.2d 1090, 1096 (1992)(emphasis added)(internal citations omitted).

As discussed, *supra*, factual disputes preclude entry of summary judgment on the question of negligence. However, Mrs. Romeo offers no evidence which could lead a reasonable jury to conclude that Speedway acted with reckless indifference to the potential hazard caused by loose gravel and asphalt. To the contrary, the evidence shows that Speedway regularly undertook to remove such debris from the ramps. Furthermore, there is no evidence that similar injuries had occurred in the past, or that Speedway was aware of any such previous injuries if they did

occur. Mrs. Romeo cannot show that Speedway had knowledge that injury would "probably occur" on the exit ramps at Talladega. Accordingly, Mrs. Romeo's wantonness claim is due to be dismissed.

## Conclusion

For the foregoing reasons, Speedway's motion for summary judgment is due to be partially granted and partially denied. A separate, appropriate order will be entered.

DONE this 10th day of June, 1999.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE